**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| CATHY JADWIN | : | |
| Plaintiff, | : | |
| | | Case No. 3:07CV00189 |
| vs. | : | |
| | | District Judge Thomas M. Rose |
| MICHAEL J. ASTRUE, | : | Magistrate Judge Sharon L. Ovington |
| Commissioner of the Social | | |
| Security Administration, | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATIONS[1]**

**I.     INTRODUCTION**

Plaintiff Cathy Jadwin suffers from multiple medical complaints, primarily knee pain following bilateral knee replacement, hypertension, and pain in the back and in both legs.  Her impairments prevent her from performing her past work as a production worker in an automobile plant (production line welder, cutter machine tender, inspector/ packager).  (Tr. 72, 89, 114, 542).  She consequently sought financial assistance from the Social Security Administration by applying for disability insurance benefits (DIB) and supplemental security income (SSI) on March 11, 2005.  (Tr. 64-70).  Plaintiff alleges disability as of May 28, 2004, in her applications.  (Tr. 64, 67).

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

After various administrative proceedings, Administrative Law Judge (ALJ) James I.K. Knapp denied Plaintiff's DIB and SSI applications based on his conclusion that Plaintiff's impairments did not constitute a "disability" within the meaning of the Social Security Act. (Tr. 30). The ALJ's nondisability determination and the resulting denial of benefits later became the final decision of the Social Security Administration. Such final decisions are subject to judicial review, *see* 42 U.S.C. § 405(g), which Plaintiff now is due.

This case is before the Court upon Plaintiff's Statement of Specific Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #11), Plaintiff's Reply to Defendant's Memorandum in Opposition (Doc #12), the administrative record, and the record as a whole.

Plaintiff seeks a reversal of the ALJ's decision or, at a minimum, a remand of this case to the Social Security Administration to correct certain alleged errors. The Commissioner seeks an Order affirming the ALJ's decision.

## II.     FACTUAL BACKGROUND

On the date of the ALJ's decision, Plaintiff's age (44) placed her in the category of a "younger person" for purposes of resolving her DIB and SSI applications. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c). (Doc. #8 at 3). Plaintiff has an eleventh grade, "limited education." *See* 20 C.F.R. §§ 404.1564(b)(3), 416.964(b)(3). (Tr. 30, Finding 10; Tr. 96).

During the administrative hearing, Plaintiff testified that she has constant pain in

both legs, down into her feet. (Tr. 525-26). Her pain begins in the hips and goes into the feet. She has been told that her leg pain is due to RSD ["reflex sympathetic dystrophy"], a condition also known as "complex regional pain syndrome." (Tr. 527). Plaintiff also testified that she has pain in her lower back. A morphine pump did not seem to help, so her doctor increased the dosage. (Tr. 528). Plaintiff testified that since her surgery, she has tried physical therapy (Tr. 526); pain shots in the knees (Tr. 527); a TENS unit ( Tr. 534); and a spinal cord stimulator, but nothing helped her pain. (Tr. 535).

 Her activities during a typical day include reading a newspaper or watching television. "That's about the extent of my day." (Tr. 530). She does not perform any household chores. Her niece comes over and helps her. The only cooking she does is in the microwave. (Tr. 531). Plaintiff further testified that she does not get out often and only goes to the store once every other week with a friend or her father. (Tr. 531). She does not sleep during the day but does try to relax and get comfortable. She may sleep up to four to six hours a night, but usually only for two hours at a time. (Tr. 532). She can drive but doesn't drive very far because of leg pain. (Tr. 537).

 Plaintiff further testified that she has used a prescribed cane since March 2005, and on the date of the hearing she picked up a new wheelchair. (Tr. 532). She stated that she uses the cane "pretty much all the time." (Tr. 533). Plaintiff testified that she cannot walk very far before she needs to sit down and rest. She did not think that she could stand for even three to five minutes. She testified that she could sit for about 10 minutes before she would need to stand up and move around. She has not tried to lift any weight. (Tr.

3

534).

Plaintiff said that she did not see how she could perform even a sit-down job because she would have to constantly change positions and would have difficulty getting comfortable enough to do the job. She noted that her pain is always present and she feels she gets never gets any relief. (Tr. 537).

Turning to the other evidence and information in the administrative record, the parties and the ALJ fairly set out the relevant medical evidence. (*See* Doc. #8 at 3-7; Tr. 17-23). In light of this, and upon consideration of the complete administrative record, additional detailed discussion of the record would be unnecessarily duplicative. Nevertheless, a general description of the medical sources upon whom the parties rely will help frame further review.

Plaintiff relies on the opinion of her treating physician, Dr. Mervet Saleh, a pain specialist, who indicated in April 2006 that Plaintiff should not lift more than one to five pounds occasionally and no amount frequently. (Tr. 367-74). Dr. Saleh thought that Plaintiff should not stand or walk for more than 10 to 15 minutes at a time and that she would need to use a cane. (*Id.*). She noted that Plaintiff could sit for only 15 to 20 minutes at a time. Plaintiff should never climb, balance, stop, crouch, kneel or crawl. Plaintiff also should avoid heights, moving machinery, temperature extremes, humidity and vibration. (*Id.*). Dr. Saleh concluded that Plaintiff could not perform even sedentary work on a sustained basis. (*Id.*).

The Commissioner contends that substantial evidence supports the ALJ's residual

4

functional capacity finding that Plaintiff can perform light exertional work. Following the administrative hearing, Plaintiff was examined by Stephen W. Duritsch, M.D., in June 2006. (Tr. 495-504). Dr. Duritsch noted that Plaintiff exhibited pain behavior with mounting and dismounting the examination table. Straight leg raise testing was inconsistent. Waddell signs were positive on axial loading and simulated trunk rotation. (*Id.*). Flexion in the knees was limited bilaterally. (*Id.*). He did not observe any swelling, asymmetry of temperature, or abnormal hair growth in the legs. (*Id.*). Dr. Duritsch diagnosed knee osteoarthritis status post bilateral total knee replacement. He opined that Plaintiff should lift no more than 25 pounds occasionally or 10 pounds frequently, and also noted that Plaintiff could stand and/or walk less than two hours in an eight-hour workday. Dr. Duritsch did not believe sitting would be limited. Plaintiff should never climb, kneel or crawl, but could balance, crouch and stoop occasionally. (Tr. 502).

### III.     ADMINISTRATIVE REVIEW

The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant (1) from performing his or her past job, and (2) from engaging in "substantial gainful activity" that is available in the regional or national economies. *See id.* A DIB/SSI applicant bears the ultimate burden of establishing that he or she is under a disability. *See Key v. Callahan*,

109 F.3d 270, 274 (6th Cir. 1997); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. (*See* Tr. 15-30). *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[2] Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the evaluation answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

In the present case, the ALJ found at Step 1 that Plaintiff has not engaged in substantial gainful activity since May 28, 2004. (Tr. 29, Finding 2). At Step 2, he

---

[2] The remaining citations will identify the pertinent SSI Regulations with full knowledge of the corresponding DIB Regulations. Plaintiff meets the insured-status requirement for DIB eligibility through December 2010. *See Colvin*, 475 F.3d at 730. (*See also* Tr. 16).

6

determined that Plaintiff has the severe impairments of mild lumbar and hip arthritis, bilateral knee arthritis, mild obesity, history of heart arrhythmias, and depressive disorder not otherwise specified. (*Id.*, Finding 3). The ALJ determined at Step 3 that the severity of these impairments does not meet or equal one in the Listings. (*Id.*, Finding 4).

At Step 4, the ALJ found that while Plaintiff is unable to perform her past relevant work (*id.*, Finding 7), she does have the residual functional capacity to perform a reduced range of light work.[3] The ALJ described his specific findings as follows:

> The claimant lacks the residual functional capacity to: (1) lift more than ten pounds frequently or twenty pounds occasionally; (2) stand or walk combined for longer than fifteen minutes at a time or two hours total in a work day; (3) crawl, kneel, or climb; (4) engage in greater than occasional crouching or stooping; (5) work at unprotected heights or around moving machinery; (6) have greater than occasional contact with supervisors, co-workers, or the public; (7) follow complex or detailed instructions, or; (8) do other than low stress work activity (*i.e.*, no job involving above average pressure for production, work that is other than routine in nature, or work that is hazardous).

(Tr. 29, Finding 6). This assessment, along with the ALJ's findings throughout his sequential evaluation, led him ultimately to conclude that Plaintiff was not under a disability and hence not eligible for DIB or SSI. (Tr. 15-30).

## IV. STANDARDS OF JUDICIAL REVIEW

---

[3] The Regulations define light work as involving the ability to lift "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds . . . ." 20 C.F.R. § 404.1567(b).

Judicial review of an ALJ's decision proceeds along two lines: whether substantial evidence in the administrative record supports the ALJ's factual findings, and whether the ALJ "applied the correct legal criteria." *Bowen v. Comm'r. of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

"Substantial evidence is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* at 746 (citing in part *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It consists of "'more than a scintilla of evidence but less than a preponderance . . .'" *Rogers v. Comm'r. of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

Judicial review of the administrative record and the ALJ's decision is not *de novo*. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The required analysis is not driven by whether the Court agrees or disagrees with an ALJ's factual findings or by whether the administrative record contains evidence contrary to those findings. *Rogers*, 486 F.3d at 241; *see Her v. Comm'r. of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Instead, the ALJ's factual findings are upheld "as long as they are supported by substantial evidence." *Rogers*, 486 F.3d at 241 (citing *Her*, 203 F.3d at 389-90).

The second line of judicial inquiry – reviewing the ALJ's legal criteria – may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *See Bowen*, 478 F.3d at 746. This occurs, for example, when the ALJ has failed to follow the Commissioner's "own regulations and where that error prejudices

a claimant on the merits or deprives the claimant of a substantial right." *Id.* (citing in part *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir.2004)).

## V. DISCUSSION

### A. The Parties' Contentions

The main issues in this matter are whether the ALJ's determination that Plaintiff retained the residual functional capacity to perform a limited range of light work was supported by substantial evidence, and whether the ALJ applied the correct legal standards in reaching that conclusion. (Doc. #8 at 1). Specifically, Plaintiff urges that the ALJ misapplied the standards governing medical opinion evidence in accepting the opinion of one-time examiner Dr. Duritsch over those of treating physician Dr. Saleh and of Dr. Reveal. (Doc. #8 at 11-15, Doc. #12 at 1-3). She further avers that the ALJ rejected "the most limiting aspect of Dr. Duritsch's opinion" (Doc. #8 at 15) without substantial evidence to support the ALJ's contrary conclusion. (*Id.* at 15-16; Doc. #12 at 2-3). Finally, Plaintiff contends that the ALJ erred in failing to fully discuss the implications of her reflex sympathetic dystrophy (RSD) diagnosis in evaluating Plaintiff's subjective complaints of pain. (Doc. #8 at16-18, Doc. #12 at 3-5).

In opposing Plaintiff's request for benefits, the Commissioner argues that the ALJ conducted the proper sequential evaluation and considered all of Plaintiff's functional limitations in reaching his residual functional capacity assessment. (Doc. #11 at 7-9). He also contends that the ALJ properly evaluated the medical source opinions (*id.* at 9-15), and reasonably discounted Dr. Saleh's opinion as "inconsistent with the residual

functional capacity findings of Drs. Duritsch, Cho and Morton." (*Id.* at 12). The Commissioner thus urges that the ALJ's decision is supported by substantial evidence, or alternatively, that Plaintiff is entitled to no more than remand, not reversal, given the lack of evidence of total disability. (*Id.* at 15-16).

B. **Medical Source Opinions**

ALJ's are required to evaluate every medical opinion of record, regardless of its source. *See* 20 C.F.R. § 404.1527(d). The evaluation first focuses on treating physicians or psychologists, whose opinions are entitled to controlling weight, under the treating physician rule, as long as they are (1) well supported by medically acceptable data, and (2) not inconsistent with other substantial evidence of record. 20 C.F.R. §404.1527(d)(2); *see Wilson,* 378 F.3d at 544. When these requirements are not met, the treating physician rule does not apply. *Id.* But the evaluation does not stop there; the ALJ must continue to weigh the treating medical source's opinions under the following factors: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source - in determining what weight to give the opinion." *Id*. (discussing § 404.1527(d)).

As to non-treating medical sources, the Regulations require ALJs to weigh their opinions subject to the factors – supportability, consistency, specialization, *etc.* – described in 20 C.F.R. § 404.1527(d). The Regulations appear to emphasize this requirement by reiterating it no less than three times. *See* 20 C.F.R. § 404.1527(d) ("we

10

consider ALJ of the following factors in deciding the weight to give any medical opinion . . ."); *see also* 20 C.F.R. § 404.1527(t)(ii) (factors apply to opinions of state agency consultants); § 404.1527(t)(iii) (same as to medical experts' opinions); Social Security Ruling 96-6p, 1996 WL 374180 at *2 (same).

### C. Subjective Symptoms

In many disability cases, the cause of the disability is not necessarily the underlying condition itself, but rather the symptoms associated with the condition. *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 247 (6th Cir. 2007). Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain. *Id.* (citations omitted). First, the individual must establish a medically determinable impairment which reasonably could be expected to produce the pain. *See Jones v. Sec'y of Health & Human Servs.,* 945 F.2d 1365 (6th Cir. 1991) (citing *Duncan v. Sec'y of Health & Human Servs.,* 801 F.2d 847 (6th Cir. 1986)). Second, the intensity and persistence of the alleged pain are evaluated, considering all of the relevant evidence. *See id.,* 945 F.2d at 1366-70.

### D. Analysis

#### i. Medical Source Opinions

In considering the opinion of Dr. Saleh, Plaintiff's treating physician, the ALJ specifically found that such opinion was "not entitled to either controlling or deferential weight." (Tr. 26). He first cited his impression that the restrictions – "especially the sitting ones" – suggested by Dr. Saleh were "grossly disproportionate to the objective

11

evidence in the record." (*Id.*). The ALJ opined that Dr. Saleh's conclusions "are contradicted" both by Dr. Reveal's 2005 evaluation and by Dr. Duritsch's June 2006 findings, showing "normal lower extremity motor strength with no evidence of atrophy, normal hand function, and normal range of motion other than mildly decreased knee range of motion." (Tr. 27). Finding that Dr. Saleh's findings were not be supported except by "the claimant's subjective report of her symptoms," the ALJ concluded that Dr. Saleh's disability opinion should be given only "minimal weight," while Dr. Duritsch's contrary opinion, which "supported his restrictions to at least some degree with objective findings," should be given "great weight." (*Id.*).

A review of the ALJ's decision indicates that he <u>did</u> apply the correct legal criteria in assessing the medical source opinion of Dr. Saleh. Based upon his conclusions that Dr. Saleh's opinions both were inconsistent with other medical opinions of record and were not sufficiently supported by objective medical data (*see supra*), the ALJ first properly concluded that the treating physician rule did not apply. (Tr. 26). *See* 20 C.F.R. § 404.1527(d)(2); *Wilson,* 378 F.3d at 544. He then cited the appropriate additional factors to be considered in such instances (Tr. 26), and found that Dr. Saleh's opinion "lack[ed] supportability in the record and history" and "[was] not compatible with other evidence," including "diagnostic studies and clinical findings." (Tr. 27). He thus declined to accord Dr. Saleh's disability opinion deferential weight "for essentially the same reasons that [it was] not given controlling weight." (*Id.*). Given this analysis, there is no basis for this Court to conclude that the ALJ failed to apply the appropriate legal standards to Dr.

12

Saleh's opinion. *See Wilson,* 378 F.3d at 544.

### ii. Plaintiff's Subjective Symptoms

We next consider whether the ALJ failed to apply the correct legal standards in evaluating Plaintiff's pain complaints. The ALJ properly observed that "[s]ymptoms, including pain," are to be considered in assessing an individual's residual functional capacity (Tr. 23), but only if such symptoms are "the result of a specific medical condition." (Tr. 24). The record is unclear as to whether the ALJ believed that Plaintiff suffered from the specific medical condition "reflex sympathetic dystrophy," or RSD. He notes that RSD "was considered to be a possible explanation" for certain of Plaintiff's symptoms (Tr. 16), and that Dr. Saleh "stated a diagnosis of" RSD. (Tr. 22). He later vacillates, however, suggesting that Dr. Saleh stated only "a <u>tentative</u> diagnosis of" RSD. (Tr. 25) (emphasis added). Significantly, the ALJ's finding of severe impairments did <u>not</u> include RSD (*see* Tr. 24; Tr. 29, Finding 3), and he explicitly stated that "[t]here is insufficient evidence of any other medically determinable severe impairment." (Tr. 24). The record thus supports a conclusion that the ALJ considered the possibility that Plaintiff suffers from RSD, yet did not find it to constitute a severe impairment.

The record also demonstrates, however, that while Dr. Saleh opined in February 2005 that Plaintiff "might have complex regional pain syndrome" [also known as RSD] (Tr. 304), RSD had become a firm diagnosis by 2006. (*See, e.g.,* Tr. 467, 466, 465). In light of such references, there can be little doubt that Plaintiff had been diagnosed with the "medically determinable impairment "of RSD. *See* 20 C.F.R. § 404.1529(b). As the

ALJ gave no reasoned explanation for his failure to include RSD among Plaintiff's severe impairments, the Court is left to infer from the record that the ALJ erroneously believed Plaintiff's RSD diagnosis to be "tentative" only.

To quote the Commissioner, however, "the issue is not whether the individual impairments are severe, but whether the ALJ considered the functional limitations resulting from all of Plaintiff's impairments."  (Doc. #11 at 7) (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)).  In *Maziarz*, the Court made clear that an ALJ's failure to find that a particular condition constituted a "severe impairment" does not constitute reversible error, since the ALJ "properly could consider [that particular] condition in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity."  837 F.2d at 244.  The ALJ's apparent error in failing to recognize Plaintiff's RSD diagnosis therefore might not be fatal if the ALJ nonetheless properly considered Plaintiff's related pain symptoms.

The record demonstrates that the ALJ did acknowledge that Plaintiff "generally reported high levels of pain," but proceeded to observe that Plaintiff "has presented in no acute distress, and she has had normal blood pressure."  (Tr. 27).  He enumerated life activities in which Plaintiff purportedly remains able to participate.  (*Id.*).  Additionally, the ALJ stated that Plaintiff "demonstrated multiple Waddell signs at her post[-]hearing evaluation, behavior that seriously undermines the credibility of her subjective symptoms."  (*Id.*).  As a result, he discounted Plaintiff's pain complaints because he found that her "subjective symptoms lack credibility."  (Tr. 28).

14

The Court finds merit to Plaintiff's objections to the ALJ's handling of her subjective complaints of pain in this manner.  The ALJ's assessment of Plaintiff's credibility contains several seeming factual errors  – for example, his statements that she "grocery shops frequently" (Tr. 27; *compare* Tr. 531, where Plaintiff testified that she goes to the store "[m]aybe once every other week"); that she "sat on the couch all day and watched television" (Tr. 27; *compare* Tr. 530, where Plaintiff testified that on a typical day, "I'll get up and maybe read the paper, try to watch TV," and Tr. 534, where she testified that she could sit for "[m]aybe up to ten minutes"); and that she "demonstrated multiple Waddell signs."  (Tr. 27; *compare* Tr. 496, where Dr. Duritsch noted two positive Waddell's signs).  The ALJ's suggestion that the positive Waddell's signs "undermine[ ] the credibility of [Plaintiff's] subjective symptoms" overstates the significance of Dr. Duritsch's findings; generally, only the presence of three or more Waddell's signs is considered to be clinically significant,[4] and Dr. Duritsch's report did not state that he believed Plaintiff to be exaggerating her symptoms.  (Tr. 496).

Because he discounted Plaintiff's pain symptoms purely on credibility grounds, the ALJ made no finding as to whether RSD reasonably could be expected to produce such pain, and did not evaluate the intensity and persistence of her alleged pain in light of all relevant evidence.  *See Jones*, 945 F.2d at 1366-70.  As his misapprehension of the facts averted the ALJ from reviewing Plaintiff's pain complaints subject to the appropriate

---

[4]*See, e.g.,* David A. Scalzitti, *Screening for Psychological Factors in Patients with Low Back Problems: Waddell's Nonorganic Signs*, Vol. 7, No. 3, PHYSICAL THERAPY, 306-12 (March 1997).

15

factors, his decision on this issue was erroneous both for lack of substantial evidence and for failure to apply the correct legal criteria. *See Bowen*, 478 F3d at 745-46.

Although neither party specifically addresses whether such error may have been harmless, *see id.* at 747-49, a review of the entire record in this matter does <u>not</u> compel a conclusion that "a different outcome on remand is unlikely." *See Wilson*, 378 F.3d at 546. Here, reasoned consideration of Plaintiff's subjective complaints of pain could have affected the ALJ's residual functional capacity assessment, which clearly could have impacted the types of jobs which Plaintiff was found able to perform, even if it would not result in a finding of disability.

The Court's conclusion that the ALJ erred in his evaluation of Plaintiff's pain complaints obviates the need for in-depth analysis of Plaintiff's remaining assignment of error as to the ALJ's alleged disregard of functional limitations recognized by Dr. Duritsch, relative to Plaintiff's ability to stand and walk. (*See* Doc. #8 at 15-16).

## VI. REMAND IS WARRANTED

If an ALJ failed to apply the correct legal standards or his factual conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits. Under Sentence Four of 42 U.S.C. §405(g), the Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Remand is appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined

effect of impairments, or failed to make a credibility finding. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case, because the evidence of disability is not overwhelming, and because the evidence of a disability is not strong while contrary evidence is weak. *See id.* Plaintiff, however, is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of § 405(g), due to the errors outlined above. On remand, the ALJ should be directed (1) to re-evaluate the Plaintiff's subjective symptoms under the legal criteria set forth in the Commissioner's Regulations, Rulings, and as required by case law; and (2) to reconsider, under the required sequential evaluation procedure, whether Plaintiff was under a disability and thus eligible for DIB and/or SSI. Accordingly, the case should be remanded to the Commissioner and the ALJ for further proceedings consistent with this Report and Recommendations.

### IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Cathy Jadwin was under a "disability" within the meaning of the Social Security Act;

3. This case be remanded to the Commissioner and the Administrative Law Judge under Sentence Four of 42 U.S.C. §405(g) for further consideration consistent with this Report; and

4. The case be terminated on the docket of this Court.

August 27, 2008                          <u>s/ Sharon L. Ovington</u>
                                                                                      Sharon L. Ovington
                                                            United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Am,* 474 U.S. 140 (1985).